UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 23cr10074 |
| | ) |
| v. | ) Violation: |
| | ) |
| JEAN MOROSE VILIENA, | ) <u>Counts One, Two and Three</u>: Visa Fraud |
| | ) (18 U.S.C. § 1546(a)) |
| Defendant | ) |

<u>INDICTMENT</u>

At all times relevant to this Indictment:

<u>General Allegations</u>

1. Defendant, JEAN MOROSE VILIENA ("VILIENA"), was a Haitian citizen who is a lawful permanent resident of the United States. He resides in Malden, Massachusetts.

2. In December 2006, VILIENA was elected to a four-year term as Mayor of Les Irois as a candidate for the Haitian Democratic and Reform Movement ("MODEREH") political party. VILIENA held that position until approximately February 2010. As a candidate and as a Mayor, VILIENA was backed by a political machine called KOREGA, which exerts power throughout the southwestern region of Haiti through armed violence. VILIENA personally supervised his mayoral staff and security detail and led an armed group in Les Irois aligned with KOREGA. Under VILIENA's direct supervision, the KOREGA militia enforced VILIENA's policies by various means, including by targeting political opponents in Les Irois through armed violence.

3. Witness One was a Haitian citizen who, in or around July 27, 2007, spoke at a judicial proceeding in Les Irois on behalf of a neighbor who had been assaulted that morning by VILIENA. In reprisal for that testimony, that evening, VILIENA led an armed group to

Witness One's home, where VILIENA and his associates shot and killed Witness One's younger brother ("Victim One"), and then smashed Victim One's skull with a large rock before a crowd of bystanders.

4. In or around March 2008, a group of local journalists and activists founded a community radio station ("the radio station"). VILIENA opposed establishment of the radio station and, on April 8, 2008, mobilized members of his staff and the KOREGA militia to forcibly shut down the radio station and seize its broadcasting equipment. At that time, VILIENA distributed firearms to the KOREGA militia members, some of whom also carried machetes, picks, and sledgehammers.

5. Victim Two was a citizen of Haiti who rented out part of his home to the radio station. On the day of the attack on the radio station, VILIENA pistol whipped Victim Two with his gun and struck him with his fists. When Victim Two tried to flee, VILIENA ordered one of his associates to shoot and kill Victim Two. Shots were fired which hit Victim Two in the leg. Victim Two spent several months in various hospitals and his leg was later amputated above his knee.

6. Witness Two was a citizen of Haiti who became a target of VILIENA because of his association with the radio station. On the day of the attack of the radio station, Witness Two was at the radio station and when Witness Two tried to flee with Victim Two, Witness Two was hit by a bullet in the face. Witness Two required months of intensive medical treatment, including two surgeries to extract shotgun pellets from his face, which left Witness Two permanently blind in one eye. Pieces of shotgun pellets remain in Witness Two's scalp and arms.

7. On June 3, 2008, VILIENA presented himself at the United States Embassy Consular Office in Port au Prince, Haiti where he submitted an Application for Immigrant Visa

and Alien Registration, Form DS-230, Part II in order to gain entry to the United States. The form specifically requires that each applicant state whether or not they are a member of any class of individuals that are excluded from admission into the United States, including those who have "ordered, carried out or materially assisted in extrajudicial and political killings and other acts of violence against the Haitian people." VILIENA responded that he was not. This answer was false as evidenced by information including that contained in paragraphs 2 through 6, above. VILIENA thereafter swore to, or affirmed, before a U.S. Consular Officer that the contents of the application were true and signed the application.

8. On or about June 4, 2008 and based upon VILIENA's false representations in the Application for Immigrant Visa and Alien Registration Form DS-230, the U.S. Department of State approved VILIENA's DS-230 application.

9. On or about July 14, 2008 – as the result of the approval of his DS-230 application – VILIENA gained entry into the United States and was thereafter granted lawful permanent residence status in the United States. As a further result of the approval of his DS-230 application, VILIENA received a Permanent Resident Card. VILIENA has continued to possess a Permanent Resident Card and has used such card on numerous occasions to enter the United States.

10. On or about May 6, 2018, VILIENA possessed his Permanent Resident Card to enter the United States at Hartsfield-Jackson Atlanta International Airport, Georgia, after travelling outside of the United States. VILIENA flew between Boston and Atlanta for his travel outside of the United States.

11. On or about May 15, 2018, VILIENA possessed and used his Permanent Resident Card when he appeared at the United States Citizenship and Immigration Service Office in

Revere, Massachusetts to apply for a new Permanent Resident Card.

12. On or about August 18, 2019, VILIENA possessed his Permanent Resident Card to enter the United States at John F. Kennedy Airport, in New York, after travelling outside of the United States. VILIENA flew between Boston and New York for his travel outside of the United States.

13. On or about November 4, 2020, VILIENA possessed and used his Permanent Resident Card to enter the United States at Boston Logan Airport, in Massachusetts, after travelling outside of the United States.

14. On or about September 28, 2021, VILIENA possessed his Permanent Resident Card to enter the United States at John F. Kennedy Airport, in New York, after travelling outside of the United States. He thereafter flew from New York to Boston Logan Airport, in Massachusetts.

15. On or about October 9, 2022, VILIENA possessed his Permanent Resident Card and presented it to a United States Customs and Border Protection officer in order to enter the United States at Derby Line, Vermont, after travelling outside of the United States. VILIENA was travelling by car and reported to the United States Customs and Border Protection officer that he was traveling home to Massachusetts.

16. A Permanent Resident Card is a document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States.

17. VILIENA was required to carry his Permanent Resident Card with him at all times pursuant to Section 264(e) of the Immigration and Nationality Act.

4

## COUNT ONE
Fraud and Misuse of Visas, Permits and Other Documents
(18 U.S.C. § 1546(a))

The Grand Jury charges:

18. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 17 of this Indictment.

19. On or about May 15, 2018, in Revere, in the District of Massachusetts, and elsewhere, the defendant,

JEAN MOROSE VILIENA,

did knowingly possess and use a Permanent Resident Card, in the name JEAN MOROSE VILIENA, which the defendant knew to be procured by means of a false claim and statement, with respect to a material fact, that he made in an Application for Immigrant Visa and Alien Registration Form DS-230, which VILIENA presented at the United States Embassy Consular Office in Port au Prince, in that the defendant falsely stated that he had not "ordered, carried out or materially assisted in extrajudicial and political killings and other acts of violence against the Haitian people."

All in violation of Title 18, United States Code, Section 1546(a).

## COUNT TWO
### Fraud and Misuse of Visas, Permits and Other Documents
### (18 U.S.C. § 1546(a))

The Grand Jury further charges:

20. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 17 of this Indictment.

21. On or about November 4, 2020, in Boston, in the District of Massachusetts, and elsewhere, the defendant,

### JEAN MOROSE VILIENA,

did knowingly possess and use a Permanent Resident Card, in the name JEAN MOROSE VILIENA, which the defendant knew to be procured by means of a false claim and statement, with respect to a material fact, that he made in an Application for Immigrant Visa and Alien Registration Form DS-230, which VILIENA presented at the United States Embassy Consular Office in Port au Prince, in that the defendant falsely stated that he had not "ordered, carried out or materially assisted in extrajudicial and political killings and other acts of violence against the Haitian people."

All in violation of Title 18, United States Code, Section 1546(a).

## COUNT THREE
### Fraud and Misuse of Visas, Permits and Other Documents
### (18 U.S.C. § 1546(a))

The Grand Jury further charges:

22. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 17 of this Indictment.

23. From on or about November 5, 2020 through on or about October 9, 2022, in Boston, in the District of Massachusetts, and elsewhere, the defendant,

JEAN MOROSE VILIENA,

did knowingly possess a Permanent Resident Card, in the name JEAN MOROSE VILIENA, which the defendant knew to be procured by means of a false claim and statement, with respect to a material fact, that he made in an Application for Immigrant Visa and Alien Registration Form DS-230, which VILIENA presented at the United States Embassy Consular Office in Port au Prince, in that the defendant falsely stated that he had not "ordered, carried out or materially assisted in extrajudicial and political killings and other acts of violence against the Haitian people."

A TRUE BILL.

_____ 3/21/2023
FOREPERSON

_____
LAURA J. KAPLAN
Assistant United States Attorney
District of Massachusetts

/s/ Christina Giffin
_____
CHRISTINA GIFFIN
Senior Counsel,

7

Human Rights and Special Prosecutions Section
Department of Justice

District of Massachusetts: 3/21, 2023
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK