UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 1:23-cr-10074-FDS |
| v. | ) |
| | ) |
| JEAN MOROSE VILIENA, | ) |
|     Defendant. | ) |
| | ) |

# **DEFENDANT'S MOTION FOR REVIEW BY DISTRICT COURT JUDGE OF DETENTION ORDER**

Now comes the defendant, Jean Morose Viliena, before this Honorable Court and respectfully moves, pursuant to 18 U.S.C. § 3145(b), that this Court review and revoke the Magistrate Judge's order detaining him.  As reasons and grounds therefor, the defendant states that there are conditions that would reasonably assure that he will appear in Court as required and that he would not pose a danger to the witnesses or any members of the community, namely, release to his brother as a third-party custodian, a curfew, surrender of all international travel and identification documents, and location monitoring.

## **BACKGROUND**

Mr. Viliena was charged in an indictment with fraud and misuse of visas, permits, and other documents in violation of 18 U.S.C. § 1546(a).  (Ex. A; Ex. B).  The Government alleges that Mr. Viliena lied on his visa application to gain entry into the United States and has sought detention under 18 U.S.C. § 3142(f)(2)(A) (alleging there is a serious risk that Mr. Viliena will flee); and 18 U.S.C. § 3142(f)(2)(B), (alleging there is a serious risk that Mr. Viliena will attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a potential witness).

1

A. **The Detention Hearing and Resulting Findings**

A detention hearing was held on March 31, 2023, before Magistrate Judge Boal at which the parties proceeded by proffer. (See Ex C; Ex. D at 1).

The Magistrate Judge (judge)'s findings include the following. Mr. Viliena, who is fifty years old, has lived in Malden, Massachusetts since 2008. (Ex. D at 3). In the four years leading up to his arrest, Mr. Viliena worked fifty to sixty hours per week as a delivery driver for a food company. (Ex. D at 3). Mr. Viliena has no criminal record in the United States and was acquitted of the criminal charges against him in connection with the instant allegations of violence in Haiti. (Ex. D at 3-4). Mr. Viliena is a lawful permanent resident of the United States. He has a Haitian passport. (Ex. D at 4). Mr. Viliena's former spouse and their twelve-year old son also live in Malden, and he maintains a positive relationship with his son. (Ex. D at 4). Mr. Viliena's parents live in Haiti, and he speaks to them regularly. (Ex. D at 4).

    i.   <u>Protective Orders Issued in Civil Matter</u>

As to Mr. Viliena's supposed obstructive behavior, the judge found the following. (See Ex. D at 4-6). In 2017, a civil lawsuit was filed against Mr. Viliena, which involved allegations of violent acts against Haitians between 2007 and 2008 (the acts also alleged in the instant indictment). (Exs. D, E, F). It is expected that the plaintiffs in the civil case will testify at trial in the instant matter. (Ex. D at 4). The magistrate judge detailed the four protective orders issued by Judge Burroughs during the pendency of that civil suit. (See Ex. D at 4-5).

    a.  *August 2019 Protective Order*

The first protective issued in August 2019 after a finding by Judge Burroughs that the plaintiffs "reasonably fear for their safety and are concerned about retaliation by" Mr. Viliena, and

ordered Mr. Viliena not to have contact with the plaintiffs, their families, or witnesses identified in the plaintiffs' initial disclosures. (Ex. D at 4; Ex. G).

      b.   *March 2020 Protective Order*

In March 2020, Judge Burroughs ordered that the depositions of plaintiffs' witnesses be conducted at an undisclosed location in Haiti, with Mr. Viliena's counsel appearing via videoconference. (Ex. D at 4-5; Ex. H). Mr. Viliena was not permitted to be "audible nor visible to the deponent." (Ex. D at 5; Ex. H). Judge Burroughs wrote that the protective order was "consistent with the Court's existing protective order" and was "necessary to protect Plaintiffs' witnesses due to reasonable fear for their safety." (Ex. D at 5; Ex. H).

      c.   *December 2022 Protective Order*

Judge Burroughs issued another protective order in December 2022 after a finding that the plaintiffs reasonably feared for their safety and the safety of witnesses who might testify at the civil trial. (Ex. D at 5; Ex. I). The order barred Mr. Viliena from "taking direct or indirect action 'designed to intimidate harass or physically harm Plaintiffs, their families, or any potential witnesses who may testify at the trial in this matter or the families of those witnesses.'" (Ex. D at 5; Ex. I). This order was based on the plaintiffs' fear, which Judge Burroughs stated were "based on past dealings" with Mr. Viliena, "as well as threats made against them during a recent meeting that was purportedly convened by [Viliena]'s brother, Faria Viliena." (Ex. D at 5; Ex. I).

      d.   *March 2023 Protective Order*

A fourth and final protective order was issued in March 2023, after Judge Burrough's finding that the plaintiffs reasonably feared for their safety and the safety of their family members and trial witnesses. (Ex. D at 5; Ex. J). Judge Burroughs found that plaintiffs' fears were "reasonably based on their past dealings with [Viliena]; [Viliena]'s posting of a Haitian battle song

on [his] Facebook page on March 18, 2023, containing descriptions of violent acts; in-person threats against the son of trial witness Franckle Isme threatening Mr. Isme and all trial witnesses upon their return to Haiti; in-person threats against the wife of trial witness Vilfranc Larrieux threatening to respond after the verdict issues; and threatening text messages sent to the sister-in-law of trial witness Osephita Lebon featuring a machine gun captioned 'how you would have died.'" (Ex. D at 5, quoting Ex. J). The order similarly barred Mr. Viliena from engaging in any actions indirectly or directly "designed to intimidate harass or physically harm Plaintiffs," their families, or any potential witnesses who may testify at the trial in this matter or the families of those witnesses. (Ex. D at 5-6; Ex. J).

    ii.   <u>Outcome of Civil Suit</u>

The civil case went to trial in March 2023 before Judge Burroughs. (See Ex. E). A jury found Mr. Viliena liable for the extrajudicial killing of one person, the attempted extrajudicial killing of two people, and the torture of two people, and awarded damages. (Ex. D at 6; Ex. K).

**B.   The Detention Order**

Based on her findings, and after evaluating the evidence alongside the criteria for detention, Judge Boal determined that "the government has met its burden regarding detention." (Ex. D at 6). The judge explained that "[o]n four separate occasions, Judge Burroughs found good cause to enter protective orders directed at Viliena's conduct with respect to witnesses," some of whom are potential participants in this criminal case. (Ex. D at 6). The judge also noted Mr. Viliena's remaining ties to Haiti, and the significant civil judgment against him. (Ex. D at 6). Thus, the judge determined that the Government established by a preponderance of the evidence that there is a serious risk of flight and by clear and convincing evidence that there is a serious risk of witness

4

intimidation and/or obstruction of justice, and that no conditions would reasonably assure the safety of the community. (Ex. D at 6).

## ARGUMENT

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). Under the Bail Reform Act, release on personal recognizance is presumed, "unless a judicial officer finds that no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). See also 18 U.S.C. § 3142(b). The Government did not sufficiently show that no set of conditions can reasonably assure Mr. Viliena's presence or the safety of people and the community. Mr. Viliena, who is presumed innocent of these charges, should be released because there are conditions of release that will reasonably assure both Mr. Viliena's appearance in court and the safety of the community.

I. **THE GOVERNMENT FAILED TO SHOW THAT MR. VILIENA WILL ATTEMPT TO OBSTRUCT JUSTICE, THREATEN, INJURE, OR INTIMIDATE, A PROSPECTIVE WITNESS OR ATTEMPT TO DO SO.**

The government had failed to establish that Mr. Viliena will attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness.

A. **The Protective Orders are Not Meaningful Evidence of Mr. Viliena's Potential Danger to Witnesses or the Community at Large, and the Magistrate's Reliance on the Protective Orders Issued in the Civil Matter is Misplaced.**

Mr. Viliena disagrees with the Magistrate Judge, to the extent that the Magistrate suggests that the issuance of the protective orders in connection with the civil matter imputed misconduct to Mr. Viliena. The protective orders were issued without objection or opposition by Mr. Viliena as their purpose was to ensure that the Plaintiffs were able to pursue their claims without

5

harassment.  At no point was Mr. Vilina sanctioned for violating any protective order, nor did the defendants move for sanctions or charge Mr. Viliena with violating protective orders despite their moving for successive orders.  Mr. Viliena did not for the most part challenge or oppose the issuance of the protective orders in the civil proceedings, but he disputes the conduct alleged in the plaintiffs' affidavits and is able to demonstrate the falsity of some of the plaintiffs' claims.

The protective orders in this matter were issued pursuant to Federal Rule of Criminal Procedure 26(c), which authorizes a trial judge to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Crim. P. 26(c).  The First Circuit has approved a trial judge's broad authority to issue such orders proactively, without the need for an evidentiary hearing.  See David v. Travisono, 495 F.2d 562, 564 (1st Cir. 1974).  Indeed, there need not be any findings of misconduct on the part of the defendant, as "the findings necessary to support such a protective order are simply that the plaintiffs reasonably fear retaliation and the court's fact finding may be materially impaired unless there is provided the tangible protection of a suitable court order." Id.

1. The First of the Protective Orders Issued Was Based on Incredible Allegations and Was Uncontested.

The first of the protective orders, which was issued in August 2019, (Ex. G), was based on allegations that are demonstrably false and was not issued after any credibility determination or after hearing, as it was unopposed.  Plaintiffs' requests were largely premised on the nature of the allegations contained within the Complaint itself.  (See Ex. L at 4-5).

The only specific allegation against the defendant not premised on the allegations stated in the complaint came from Juders Ysemé.  In support of the request for a protective order, the Plaintiffs submitted an affidavit by Juders Ysemé, which outlined two specific instances of conduct by Mr. Viliena relating to a 2019 visit by Mr. Viliena to Haiti.  (See Ex. M).  Ysemé claims that

he was told by "an individual" who was present for a speech that Mr. Viliena gave at a soccer game that Mr. Viliena stated that "he had returned to Les Irois to be a candidate for mayor or deputy," and that he also "stated that he could now run for elected office because he no longer had any legal troubles." Id. at ¶ 7. Ysemé than claimed that this same person stated that Mr. Viliena went to his house with small group of people and "told those in attendance that Nissage Martyr was already dead and that David Boniface and I needed to be killed by any means." Id. at ¶ 8.

Mr. Viliena fully disputes these allegations. The statements are not based on Mr. Ysemé's personal knowledge and are attributed to a completely unknown person. As to allegations of what was supposedly said at the house, the affidavit is especially suspect as it outlines no basis of knowledge for this statement attributed to an unnamed person. Moreover, no evidence supporting these claims was advanced or proven at the 2023 civil trial.

In fact, objective documentary evidence demonstrates that the claims of this anonymous person are not credible. Mr. Viliena did appear at a soccer game in 2019 in Les Irois and made a speech. Fortunately for Mr. Viliena, it was filmed and a copy of it with a translation of the statements made on the video are attached, so this Court can see the falsity of Yseme's characterization of this speech. (Ex. N; Ex. O). Mr. Viliena ran a foundation that supported members of the community, and the video shows him being well received by Les Irois community as he participated in a large community event. Mr. Viliena then gave a speech about the foundation and its distribution of money to members of the community. At no point does Mr. Viliena discuss politics or any intended return to politics. At no point does Mr. Viliena discuss his legal troubles. He only discusses the soccer game and the award from the foundation in connection with it. The claims by this anonymous individual cited by Mr. Ysemé are not credible.

2. <u>The Second of the Protective Orders Issued Similarly Was Uncontested.</u>

The second of the protective orders issued, see Ex. H, was similarly not meaningful because it was unopposed and not issued after any hearing or credibility assessment. The March 2020 motion and protective order was to permit the remote depositions of the Plaintiffs from undisclosed locations and outside of the presence of the defendant. (See Ex. H; Ex. P). No new conduct was alleged to have been committed by Mr. Viliena between the August 2019 and the March 2020 request for further protective orders. Instead, the motion was premised on what the Plaintiffs' characterized as the "Defendant's well-documented, long-standing and ongoing harassment, intimidation and violence towards Plaintiffs and the relevant witnesses," as alleged in civil complaint and repeated in the Plaintiffs' first motion for a protective order, and the fact that the Court had already allowed the first protective order request. (See Ex. P). This motion was unopposed by Mr. Viliena, and the motion was accordingly "[g]ranted as unopposed." (Ex. H). Because no new conduct was alleged against Mr. Viliena for the period of August 2019 through the issuance of this order, and because Mr. Viliena did not oppose the order, no negative inference should be drawn as to Mr. Viliena by the issuance of the March 2020 Protective Order.

3. <u>The Third of the Protective Orders Issued, Although Factually Disputed by Mr. Viliena in the Civil Proceedings, Similarly Was Unopposed</u>.

The third of the protective orders issued, (See Ex. I), similarly does not permit a negative inference as to Mr. Viliena's conduct as it was also unopposed, and no credibility determinations were made.

In December 2022, plaintiffs David Boniface and Nissandère Martyr filed a further motion for a protective order pursuant to Fed. R. Civ. P. 26(c) and this Court's inherent powers, seeking an "order barring any further harassment, intimidation, and/or physical harm of Plaintiffs and potential trial witnesses by defendant Jean Morose Viliena." (Ex. Q). As support for this motion,

the Plaintiffs relied on the affidavit of Juders Ysemé, see Ex. R.  Ysemé claimed "I recently learned from an individual present at the meeting that on or about November 29 or 30, 2022, Defendant's brother, Faria Viliena, convened a meeting on behalf of Defendant with approximately fifteen of Defendant's associates . . . at Mr. Amerikan's residence in Les Irois, Haiti.  Individuals from a criminal gang from Port-au Prince, who do not live in Les Irois, were also present at the meeting." (Ex. R ¶ 3).  The affidavit further claimed:

> According to the individual present at the meeting, Faria discussed with Defendant's associates a plan to search for myself and Mr. Boniface, and 'finish' us so that we could no longer pursue justice. I understand that Faria and certain of Defendant's associates are currently searching the town where they believe Mr. Boniface and I are living in hiding, and intend to physically harm or kill us if they locate us. If Faria and Defendant's associates do not find us, I fear that they will harass, intimidate, or kill our family members in retaliation for our bringing this lawsuit against Defendant and to prevent us from testifying at trial. I also understand suspected trial witnesses are also targets of Faria and Defendant's associates who intend to harass, intimidate, or kill them to prevent their testimony.

(Ex. R ¶ 7).

The motion was allowed, and the Court ordered that "Jean Morose Viliena shall not engage in any actions, either directly or indirectly, designed to intimidate, harass, or physically harm Plaintiffs, their families, or any potential witnesses who may testify at the trial in this matter or the families of those witnesses." (Ex. I).  Although Viliena did not oppose the motion, he took offense at Mr. Ysemé's false allegations against his brother, and Mr. Viliena by implication.  Mr. Viliena therefore filed a motion pursuant to Fed. R. Civ. Rule 12(f) to strike that Declaration of Juders Ysemé.  (Ex. S).  In that filing, Mr. Viliena stated:

> In and of itself, of course, an Order which protects others from harm or physical violence is hardly objectionable. Neither the Defendant, nor anyone else connected to the case, wants others subjected to threats or intimidation.  Threats and intimidation, however, are a two way street.  The Plaintiffs are represented by, among others, the Center for Justice & Accountability ("CJA"), a public advocacy organization. . . There is nothing wrong with advocacy.  There is something wrong though with the idea that a party can file with the Court unsupported allegations

suggesting that the Defendant is conspiring with others to murder them. The statements are scandalous and defamatory and subject the Defendant to real harm. They should not be allowed to remain on the record.

(Ex. S ¶ 5).

Noting that Mr. Viliena did not oppose the protective order, the Court denied the motion to strike on the technical grounds that Fed. R. Civ. P. 12(f) did not apply to the third-party affidavit, and therefore, the Court did not reach the merits of Mr. Viliena's claims. (See Ex. E at No. 186). In issuing the protective order, the Court did not make findings of facts as to the truth of Mr. Ysemé's allegations attributed to an anonymous person, nor were findings made regarding any conduct attributable to Mr. Viliena.

  4. <u>The Fourth and Final of the Protective Orders Issued Was Also Unopposed</u>.

The last of the protective orders issued, (Ex. J), is also not meaningful because it was not issued after any credibility findings. Just before the jury began deliberating in Mr. Viliena's civil case on March 20, 2023, the Plaintiffs moved for a further protective order.[1] (Ex. T; Ex. U). In so moving, the Plaintiffs claimed:

> Since the start of trial on March 13, 2023, and upon hearing the testimony of Plaintiffs and third-party witnesses, threats against the families of Plaintiffs and trial witnesses have only increased. For example, the family of trial witness Vilfranc Larrieux has been the target of Defendant's associates in Haiti since Mr. Larrieux testified on March 15, 2023. (Declaration of Vilfranc Larrieux ("Larrieux Decl."), ¶ 4.) Just yesterday on March 19, 2023, the wife of William Lebon—the brother of trial witness Osephita Lebon and Defendant's opponent in the 2006 mayoral election—was threatened. (Declaration of Juders Ysemé ("Ysemé 2023 Decl."), ¶¶ 11-13.) Plaintiffs have proffered testimony that this is the exact type of retributive violence frequently relied upon by powerful state actors to deter victims from pursuing justice. (3/16/23 Trial Tr. at 24:25-25:3 (expert witness Brian Concannon testifying that "people who pursue claims against powerful people in

---

[1] That motion includes a footnote stating that "On March 24, 2017, one day after Defendant was served with the Summons and Complaint in this matter, official plaintiff Nissage Martyr died suddenly under unusual circumstances." (See Ex. T at 1). The Government repeats this inflammatory statement, presumably to suggest that Mr. Viliena had some role in his death. No facts support this theory.

> Haiti for human rights violations . . . face a very significant risk of retributive violence.").) The attached Declarations of Mr. Yseme and Mr. Larrieux make clear that there is an imminent threat of violence and ongoing intimidation in Haiti against the families of Plaintiffs and trial witnesses in a blatant effort to thwart their legal case and deny them justice. Plaintiffs and the trial witnesses will face similar threats of reprisals upon their return to Haiti. Plaintiffs bring the instant motion to mitigate the significant safety risks and to protect the trial witnesses.

(Ex. T).

Ysemé's affidavit also references a song that Mr. Viliena posted on his Facebook page. (Ex. U). The Government claims that Mr. Viliena violated the protective when he posted this "battle song" on Facebook. When brought to her attention, the trial judge acknowledged the posting but did not find that Mr. Viliena violated the court's order. As even the affidavit describes, it is a well-known song about determination. (See Ex. U). The 13-minute music video includes preaching by an apparent religious leader, with religious lyrics that do not represent an actual cry to battle but rather, a motivational message. (See Ex. W). From the screenshot it appears that the post was not directed at anyone; no one was tagged, there was no caption alluding to a recipient of any message, and it was not made available to the public at large. (See Ex. U).

Had Mr. Viliena participated or had a role in any of the alleged harassing conduct, such as the threats issued, he would have violated the existing protective orders and likely, the law. Nevertheless, the Court did not suggest that Mr. Viliena violated the protective orders or engaged in wrongful conduct. The extent to which the substance of the allegations advanced by the Plaintiffs were addressed in Court is as follows:

> Mr. Haley, they've submitted a proposed order on the emergency motion for a protective order. I'm going to sign the order as they submitted it. And I just want make it very clear to the defendant that you may not engage in any actions that are designed to intimidate or physically harm anybody in connection with this trial, and I am deadly serious about that. So I don't know if it was you doing these things or it isn't you, but if you have any involvement, there will be consequences to it. And that is where the order is going to stand. All right? So I'm going to enter it as it is,

11

only deleting "Proposed." Do you want to just resend it? Why don't you email it to Karen without "Proposed Order," please.

(Ex. V).

Thus, notwithstanding Mr. Viliena's presence in Court when the allegations were made, at no point did the Court find the need to address the truthfulness of the claims made by the Plaintiff's in proactively issuing the protective order.

> 5. In Conclusion, None of the Protective Orders Support a Negative Inference Against Mr. Viliena Or His Potential Threat to Witnesses or the Community.

In sum, the Magistrate Judge's findings that the issuance of the protective orders by Judge Burroughs in the civil proceedings supported negative inferences against Mr. Viliena are not warranted. There is no evidence that Mr. Viliena ever violated a protective order in the civil matter. And because there is no evidence connecting the allegations of harassing or threatening conduct with Mr. Viliena specifically instead of third parties, the alleged actions of others cannot be attributed to Mr. Viliena. There is extensive violence in Haiti independent of the instant allegations, and the plaintiffs have made serious accusations against many people who live in Haiti and have independent reasons to retaliate against the plaintiffs for what they perceive as defamatory statements about them. And to the extent the Court has any concerns whatsoever about social media, Mr. Viliena would agree to a condition that he refrain from creating Facebook posts.

## II. THE GOVERNMENT FAILED TO SHOW A SERIOUS RISK THAT MR. VILIENA WILL FLEE.

The Government also has the burden of showing that there are no conditions or combination of conditions that will reasonably ensure Mr. Viliena's presence at future court proceedings. See United States v. Almohandis, 297 F.Supp.2d 404, 405-406 (D. Mass. 2004).

Mr. Viliena is charged with allegedly making a false, material statement on a visa application, not on any allegations of violence. Although the charges are serious, by themselves

they do not justify detention based on flight risk.  See United States v. Giordana, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005).  Mr. Viliena's long-established roots in Malden, his family ties, as well as his ongoing responsibilities to his young son, his education, employment, and his commitment to litigate this matter in court all require his release from detention.  Should the court have any concerns, there are conditions that the court can impose to address them.  Mr. Viliena has agreed to surrender his passport and not obtain any travel documents, which assuages the Government's contention that "he could easily flee."

Mr. Viliena did not fail to show up in court when he was expected to be present for the civil case.  He also attended every day of trial and waited in the courthouse for the verdict.  He took time off from work and a semester off from his master's degree program so he could be at the trial, which lasted seven days.  The morning after the jury awarded the $15.5 million dollar judgment, he got up and went back to work.  After learning that the authorities were at his job waiting for him, he returned from his delivery route in order to be arrested.

Mr. Viliena's family is eager to assist him find suitable housing in Massachusetts upon his release, and intends to support him throughout this case.  Mr. Viliena respectfully requests that this Court revoke the Magistrate Judge's order detaining him, and order him on conditions of pretrial release.

Respectfully submitted,

**Jean Morose Viliena,**

by his attorney,

*/s/ Jason Benzaken*
Jason Benzaken, Esq.
Benzaken Maguire, Sheehan & Wood, LLP
1342 Belmont Street, Suite 102
Brockton, MA 02301
(Tel) 508-897-0001
(Fax) 508-587-5455
BBO No. 658869
jbenzaken@bmswlaw.com

Dated:  April 24, 2024

## Certificate of Service

I hereby certify that a copy of this motion has been filed and served through the CM/ECF system and will be sent electronically to all registered participants in this matter as identified on the Notice of Electronic Filing (NEF).

*/s/ Jason Benzaken*
Jason Benzaken

Dated:  April 24, 2024