UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Crim. No. 23-10074-FDS |
| JEAN MOROSE VILIENA, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW OF DETENTION ORDER

The United States of America, by and through its attorneys, Joshua S, Levy, Acting United States Attorney, and Assistant U.S. Attorney Laura J. Kaplan, submit this opposition to Defendant's Motion For Review Of Detention Order, filed on April 24, 2024 (Dkt. #72). In his motion, defendant requests that this Court vacate Magistrate Judge Boal's detention order and order his release on pretrial conditions. Defendant's motion should be denied. First, defendant's motion should be denied as untimely – being filed almost a full year after Magistrate Judge Boal's detention order and with no new evidence being offered in support thereof. Second, as Magistrate Judge Boal correctly found, defendant poses a serious risk of flight and a serious risk of witness intimidation and/or obstruction of justice, and conditions are insufficient to reasonably ensure the safety of the community.

### I. Background

As alleged in the Indictment, in December 2006, the defendant was elected to a four-year term as Mayor of Les Irois as a candidate for the Haitian Democratic and Reform Movement ("MODEREH") political party. The defendant held that position until approximately February 2010. As a candidate and as a mayor, the defendant was backed by a political machine called

KOREGA, which exerts power throughout the southwestern region of Haiti through armed violence. The defendant personally supervised his mayoral staff and security detail and led an armed group in Les Irois aligned with KOREGA. Under the defendant's direct supervision, the KOREGA militia enforced the defendant's policies by various means, including by targeting political opponents in Les Irois through armed violence. During that time, the defendant engaged in several acts of violence, including the killing of one individual and the attack on a radio station and beatings of two other individuals, which caused these individuals serious injury.

Witness One was a Haitian citizen who, in or around July 27, 2007, spoke at a judicial proceeding in Les Irois on behalf of a neighbor who had been assaulted that morning by VILIENA. In reprisal for that testimony, that evening, VILIENA led an armed group to Witness One's home, where VILIENA and his associates shot and killed Witness One's younger brother ("Victim One"), and then smashed Victim One's skull with a large rock before a crowd of bystanders.

In or around March 2008, a group of local journalists and activists founded a community radio station ("the radio station"). VILIENA opposed establishment of the radio station and, on April 8, 2008, mobilized members of his staff and the KOREGA militia to forcibly shut down the radio station and seize its broadcasting equipment. At that time, VILIENA distributed firearms to the KOREGA militia members, some of whom also carried machetes, picks, and sledgehammers.

Victim Two was a citizen of Haiti who rented out part of his home to the radio station. On the day of the attack on the radio station, VILIENA pistol whipped Victim Two with his gun and struck him with his fists. When Victim Two tried to flee, VILIENA ordered one of his associates to shoot and kill Victim Two. Shots were fired which hit Victim Two in the leg. Victim Two spent several months in various hospitals and his leg was later amputated above his knee.

Witness Two was a citizen of Haiti who became a target of VILIENA because of his

association with the radio station. On the day of the attack of the radio station, Witness Two was at the radio station and when Witness Two tried to flee with Victim Two, Witness Two was hit by a bullet in the face. Witness Two required months of intensive medical treatment, including two surgeries to extract shotgun pellets from his face, which left Witness Two permanently blind in one eye. Pieces of shotgun pellets remain in Witness Two's scalp and arms.

On June 3, 2008, the defendant presented himself at the United States Embassy Consular Office in Port au Prince, Haiti where he submitted an Application for Immigrant Visa and Alien Registration, Form DS-230, Part II in order to gain entry to the United States. The form specifically requires that each applicant state whether or not they are a member of any class of individuals that are excluded from admission into the United States, including those who have "ordered, carried out or materially assisted in extrajudicial and political killings and other acts of violence against the Haitian people." The defendant responded that he was not. This answer was false as evidenced by information from several victims and witnesses to the murder and beating described above. The defendant thereafter swore to, or affirmed, before a U.S. Consular Officer that the contents of the application were true and signed the application.

On or about June 4, 2008 and based upon the defendant's false representations in the Application for Immigrant Visa and Alien Registration Form DS-230, the U.S. Department of State approved the defendant's DS-230 application.

On or about July 14, 2008 – as the result of the approval of his DS-230 application – the defendant gained entry into the United States and was thereafter granted lawful permanent residence status in the United States. As a further result of the approval of his DS-230 application, the defendant received a Permanent Resident Card. The defendant has continued to possess a Permanent Resident Card and has used such card on numerous occasions to enter the United States.

On March 22, 2017, a civil lawsuit was filed against the defendant alleging various violations under the Torture Victim Protection Act and Alien Tort Statute. *See Civil Case Number 17-10477-ADB*. The facts in that civil action include the incidents described in the Indictment involving Victims One and Two, and Witnesses One and Two. The same witnesses in the civil case will testify in the criminal trial.

Since the filing of the civil action, the Honorable Judge Allison Burroughs has imposed four protective orders – the December 2022 Protective Order explicitly barring defendant from taking either direct or indirect action "designed to intimidate, harass, or physically harm plaintiffs, their families, or any potential witnesses who may testify at the trial," (Dkt. 180); the August 2019 order imposing an unequivocal no contact order between defendant and plaintiffs in that case or their families or the witnesses identified in plaintiffs' initial disclosures, (Dkt. 80); the March 2020 order imposing restrictions on defendant's participation in depositions of plaintiffs and witnesses, which acknowledged "reasonable fear for their safety." (Dkt. 106); and the March 20, 2023 Order Regarding Plaintiffs' Emergency Motion for Protective Order (Dkt 247).

On March 13, 2023, a jury trial was commenced in the District of Massachusetts before Judge Burroughs. See, Civil Case Number 17-cv-10477-ADB. Since the start of the trial, and upon hearing the testimony of plaintiffs and third-party witnesses, threats against the families of plaintiffs and trial witnesses increased. As a result, on March 20, 2023, Judge Burroughs issued her fourth protective order based on Plaintiffs' Emergency Motion for Protective Order to Bar Harassment and Intimidation of Parties and Witnesses in Connection with Ongoing Trial Proceedings (Dkt. 247). The Court concluded that plaintiffs reasonably feared for their safety and the safety of witnesses who testified at the trial in this matter, as well as their respective family members. Judge Burroughs went on to state:

> Their fears are reasonably based on their past dealings with Defendant; Defendant's posting of a Haitian battle song on defendant's Facebook page on March 18, 2023, containing descriptions of violent acts; in-person threats against the son of a trial witness threatening to respond after the verdict issues; and threatening text messages sent to the sister-in-law of a trial witness featuring a machine gun captioned, "how you would have died."

During jury deliberations, on March 20, 2023, an additional threat was made against the family of a witness who had testified in the trial, in violation of Judge Burroughs's March 20, 2023 protective order and previous protective orders. A copy of plaintiffs' motion for protective order, declarations, and exhibits were attached to the government's motion for detention as Exhibit 2. According to a witness, an associate of the defendant named in the trial sought out the witness's husband in Haiti and stated that he knew that the witness had named him and another as "chimere" (henchmen) and was working with plaintiffs. This threat was consistent with the threat to the wife of another witness, in Haiti, on March 18, 2023 by both the same associate of the defendant and another individual. On that day, the wife of the witness was visited at her home in Haiti by these same individuals who similarly complained that they heard they were named in the civil trial as criminals and would respond accordingly when the witness returns to Haiti.

On March 21, 2023, in Civil Case Number 17-10477-ADB, a jury found the defendant liable for the extrajudicial killing of Victim One, and the attempted extrajudicial killing and torture of Victim Two and Witness Two. Plaintiffs were awarded eleven million dollars in punitive damages. Accordingly, the defendant clearly poses a significant risk to public safety, a significant risk of flight, and a significant risk of obstructing justice

## II. The Detention Order

On March 31, 2023, Magistrate Judge Boal conducted a detention hearing. At the hearing, the parties proceeded by proffer. The government introduced two exhibits to its initial motion for

detention and two additional exhibits to its supplemental motion. See, Dkt. Nos. 8-1, 17-1, 17-2. The Court did not consider 17-2.

On April 11, 2023, Magistrate Judge Boal issued an order of detention. (Dkt. #22).

In the Detention Order, Magistrate Judge Boal found that the government had established (1) by a preponderance of the evidence that there is a serious risk of flight, and (2) by clear and convincing evidence that there is a serious risk of witness intimidation and/or obstruction of justice. She further found that no condition or combination of conditions will reasonably assure the safety of the community.

Magistrate Judge Boal's conclusion was based upon multiple factors including the above-described facts. She found that after carefully evaluating the evidence in light of the criteria for detention set forth in 18 U.S.C. § 3142, the government had met its burden regarding detention. She also cited that on four separate occasions before and during the civil trial, Judge Burroughs found good cause to enter protective orders directed at defendant's conduct with respect to witnesses - some of the very same witnesses who are potential participants in the instant case. In addition, she found that defendant has maintained ties to Haiti, as he has acknowledged in his motion to revoke the detention order and noted that he now faces a significant civil judgment in this country.

### III. Legal Standard

Pursuant to 18 U.S.C. § 3145(b), a person ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the detention order." This Court, as the court of "original jurisdiction," conducts *de novo* review of a contested detention order. *See United States v. Gennaco*, 834 F. Supp. 2d 38, 40 (D. Mass. 2011) (Gorton, J.). However, the defendant is not entitled to a hearing as a matter of

6

right. *See United States v. Mubarak,* 2021 WL 242049, *3 (D. Mass. 2021) (Burroughs, J.) (citing *United States v. Pierce,* 107 F. Supp. 2d 126, 127 (D. Mass. 2000) (Gorton, J.) ("Section 3145(b) of Title 18 does not provide for a hearing as a matter of right.")). "Where a court examines the detention order without taking new evidence, a degree of deference to the factual determinations of the Magistrate tempers the independent review." *Mubarak,* 2021 WL 242049, at *3 (quoting *United States v. McForbes,* 109 F. Supp. 3d 365, 367 n.2 (D. Mass. 2015) (Hillman, J.)).

Section 3142(e) provides that a defendant may be detained pending trial if the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The Government bears the burden of demonstrating that the defendant poses a danger to the community by clear and convincing evidence, or that the defendant poses a flight risk by a preponderance of the evidence. *See United States v. Scott*, 2006 WL 8437926, *1 (D. Mass. 2006) (Saylor, J.).

In determining whether any conditions of release will reasonably assure the defendant's appearance and the safety of any other person and the community, the Court must consider the factors set forth in 18 U.S.C. § 3142(g), which include: (1) the nature and circumstances of the offense charged, including whether the offense involves a narcotic drug; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger that the defendant's release would pose to any other person or the community.

Based on the totality of the circumstances Magistrate Judge Boal has already considered in ordering detention in this matter, including those detailed herein and in Magistrate Judge Boal's order of detention, the Court should decline to convene a hearing and consider the issue of detention by reviewing the record below. Accordingly, "[w]here, as here, a court examines the

detention order without taking new evidence, a degree of deference to the factual determinations of the Magistrate tempers the independent review." *United States v. McForbes*, 109 F. Supp. 3d 365, 367 n.2 (D.Mass. 2015).

**IV.     Argument**

Consistent with Magistrate Judge Boal's determination, the evidence adduced at the detention hearing provided ample basis to establish that defendant poses an intolerable risk of flight, witness intimidation and/or obstruction of justice. and that his detention is warranted, as no condition or combination of conditions of release will reasonably assure the community's safety.

The crux of defendant's argument in seeking revocation of Magistrate Judge Boal's detention order is his erroneous belief that Magistrate Judge Boal's decision was based solely on Judge Burrough's four protective orders which he now seeks to relitigate.[1]  His argument is misplaced. The protective orders, although certainly compelling evidence of the serious risk posed by the defendant, were just one basis for detention.[2]  Magistrate Judge Boal's detention order was based on the totality of the circumstances, including all of the factors set forth in 18 U.S.C. § 3142(g), which will be discussed in further detail below.

As an initial matter, defendant asserts in support of his motion for revocation of the detention order that he was acquitted of the criminal charges against him in connection with the

---

[1] Interestingly, although the defendant "fully disputes the allegations," he offers only argument and no affidavit or any other evidence refuting the factual basis for the protective orders.

[2] Defendant's claim that the first protective order was largely premised on the nature of the allegations contained within the civil complaint is not accurate.  In support of plaintiff's request for a protective order was Juders' affidavit which documented the death of one of the victim's the day after the defendant was served with the complaint and that he (Juders) and David Boniface had been living in hiding for over two years because of the fear of reprisal.

instant allegations of violence in Haiti. Although technically correct, this argument ignores the fact that defendant was declared a fugitive from justice in Haiti, as well as the testimony in the civil trial from the expert Brian Concannon that his acquittal "is highly consistent with a corrupt verdict." (Trial Day 5, pages 83-87)

Defendant states that his parents live in Haiti and he visits them regularly. This too is true; however, the Court should be aware that defendant's father, Lissage Viliena,, was among those who were identified by multiple witnesses at the civil trial as taking part in the attacks spearheaded by defendant. (3/14/23 Trial Tr. at 23:9-14) (David Boniface identifying Lissage Viliena as among defendant's associates who threatened him following the killing of Eclesiaste Boniface); *id*. at 50:8-12, 57:14-23, 67:15-19, 70:11-20 (Juders Ysemé identifying Lissage Viliena as among defendant's associates connected to the attack on the radio station and the mass arson); 3/15/23 Trial Tr. at 108:14-19 (Jean Denais Laguerre identifying Lissage Viliena as among defendant's associates connected to the attack on the radio station).

As for the protective orders, defendant should not now be permitted to relitigate these orders. His challenge to the First Protective Order relates to threats made at a 2019 soccer game in Les Irois. Defendant denies making any threats and attaches a video of defendant speaking, and purported translation (Defendant's Motion, Exhibit N; O). However, the video, which was not uploaded to ECF, is in Haitian and the government has not had an opportunity to have it translated. Moreover, the translation does not appear to be complete as it cuts off at the bottom of page 3 and then restarts again later.

He next challenges the Second Protective Order arguing that it was unopposed by him. This is not entirely correct. Defendant did oppose the emergency motion for the second protective order (see Dkts. 86's 37.1 certification noting that "Defendant opposes the requested relief and

9

wishes to be physically present at the deposition"; *see also* Dkt. 88 Defendant Opposition to Motion). Plaintiffs' then withdrew their motion (Dkt. 93) given the instability in Haiti but ultimately refiled it. (Dkt. 102). The 37.1 certification to Dkt.102 notes that "Defendant opposes the requested relief and wishes to be physically present at the deposition". Defendant did not file an opposition brief to the motion, however, and the Court then did grant the motion as "unopposed" (Dkt. 106).

Defendant also challenges the Fourth Protective Order which, in part[3], relied on a song posted on Facebook by defendant. The Court should be aware that the song was posted hours after the defendant presented his testimony in the civil case. Some of the lyrics highlighted in the motion for protective order (Dkt. 241) include:

> I have my sword, I will keep moving forward  I am in war, I need to fight.  Don't be a coward  My sword already has blood on it not the time to stop   Already bleeding, so no way to stop  No move back. Getting closer than ever  Soldiers stand up for Haiti  Do you want to fight raise your hand.

Certainly an inference could properly be drawn that this was an attempt to further intimidate witnesses and rile up defendant's supporters in Haiti.

Finally, defendant argues that there is no evidence connecting the allegations of harassing or threatening conduct alleged in the motions for protective orders with defendant instead of third parties.  This is untrue.  At trial, one of the witnesses, Nissandère,, testified to a threat that defendant made directly against him while he was in Les Irois for the soccer match after Nissandère

---

[3] Defendant ignores the evidence of threats in the affidavits in support of the motions for protective orders which documented additional threats such as: screenshots of a photo of a machine gun with threatening language that was sent to the wife of Pastor Lebon while the trial was ongoing. (see Dkt. 242); threats against the son of one of plaintiffs' witnesses, Franckel Isme, the day after he testified in the proceedings (Dkt. 242) and; threats against the wife of one of plaintiffs' witnesses, Vilfranc Larrieux, a few days after he testified in the case (Dkt.243).

was substituted as a plaintiff in his father's place: defendant "pointed out to [Nissandère] and said, you, the son of Nissage, I will shoot you if you don't calm down." Civil Trial Tr. Mar. 20, 2023 at 87:30-25. This came after defendant had been admonished by the court during the hearing on the Motion to Substitute to stay far away from the witnesses in the case. (ECF No. 31 at 12:1-12:12.)

Magistrate Judge Boal appropriately based her detention orders on the totality of the circumstances, including all of the factors set forth in 18 U.S.C. § 3142(g) and her order should be given great deference by this Court.

### The Nature and Circumstances of the Offense Favor Detention

The nature and circumstances of the charged offense are serious. The Indictment charges the defendant with three counts of visa fraud case based on a false statement he made on his visa application wherein he denied involvement in ordering, carrying out or materially assisting in extrajudicial and political killings and other acts of violence against the Haitian people. The nature and circumstances of the underlying offense in this case involve acts of violence. The specific acts of violence are set out in the Indictment and in the background section of this opposition. They include the murder of one individual and the shootings of two others which caused them serious injury. *See, e.g.*, *Indictment* ¶¶ 3-6.

### a.   The Weight of the Evidence Favors Detention

The weight of the evidence against the defendant – at least for purposes of a bail determination – is overwhelming and strongly favors detention. The evidence of visa fraud is strong and includes records and testimony from U.S. Customs and Border Patrol, the Department of State, and several victims and witnesses about the violence they sustained at the hands of the defendant and his associates, all in direct contradiction to his lie on his visa application.

### b.   Defendant's History and Characteristics Favor Detention

While in Haiti, the defendant engaged in or directed others to engage in violence. Now, in Massachusetts, while awaiting a civil verdict against him, the defendant has engaged in, or directed others to engage in, acts of harassment and intimidation, and otherwise threatening conduct referred to in the four protective orders issued by Judge Burroughs. Indeed, the defendant engaged in this conduct in violation of these protective orders which certainly demonstrates the necessity of detention and that the defendant is a danger to the public and a significant risk of obstructing justice.

### c. The Seriousness of Danger to Others Favors Detention

The seriousness of the danger to others is enormous. As detailed in the Indictment, defendant has significant power and influence over his supporters in Haiti. Apparently, he continues to hold such power and influence and does not hesitate to use this power to influence others to intimidate and harass witnesses and their families. As outlined above, the recent threats to the families of witnesses during the civil trial by the defendant's associates was pervasive and there is no reason to believe they will not continue throughout the criminal prosecution.

Additionally, as detailed in the Indictment, the evidence overwhelmingly illustrates defendant's involvement in acts of violence and use of weapons which presents a serious risk of danger to others.

### d. The Risk of Flight and Risk of Obstruction of Justice Favors Detention

Although defendant is a lawful permanent resident of the United States, he has a Permanent Resident Card and a Haitian passport which allow him to travel freely in and out of the United States. He has powerful incentive now to flee given the multimillion-dollar judgement against him as well as a significant term of incarceration should he be convicted. This would not be the first time that defendant fled. He previously fled judicial proceedings against him in Haiti, where he

was declared by the Court to be a "fugitive" from justice. The defendant still has family, including his mother, friends, and other connections in Haiti. Therefore, he could easily flee the United States to avoid prosecution.

In addition, the defendant has demonstrated a willingness to defy four protective orders and engage in obstructive behavior towards witnesses, and there is a significant risk that he will continue to do so. Thus, it appears unlikely that the defendant will be able to abide by any order for conditions of release fashioned by this Court.

Finally, attached to the government's supplemental motion for detention (Dkt. #17) as Exhibit 1 was the Declaration of Juders Yseme ("Yseme"). Yseme testified in the civil trial and is expected to be an essential witness in the criminal case. He is a victim of the 2008 radio station attack after having being fired upon at the direction of the defendant (and by one of the individuals now threatening him and his family). His injuries left him blind in one eye.

Yseme's Declaration describes a meeting that took place in Les Irois just days after the civil verdict against the defendant and after his criminal indictment. The purpose of the meeting was to discuss the verdict and the new criminal charges. The meeting was attended by some twenty or so individuals, including three individuals who were specifically named by the witnesses in the civil trial as members of the armed group aligned with KOREGA and led by the defendant. Yseme explained his understandable concern and fear that if the defendant is released from detention and has access to his telephone, he will communicate with his henchmen and give the orders and encouragement to harm or even kill his family in Haiti in retaliation for seeking justice against him and having him arrested. Not only are these individuals angry about the civil verdict and what it means for the defendant, their commander, but as Yseme explains they are enraged that they were

named in the civil trial as co-conspirators because they too had hoped to find refuge in the United States. Those hopes are now gone.

Yseme's declaration speaks for itself. Yseme and the other witnesses – all of whom left their families behind and bravely testified against the defendant in the civil trial, and who are necessary witnesses in the government's criminal case cannot possibly return to Les Irois or they will be killed. Tragically, the lives of the witnesses and their family members are in grave danger. In fact, many of the witnesses family members are still in hiding in Haiti.

## CONCLUSION

The defendant poses a significant risk to public safety, a significant risk of flight, and a significant risk of obstructing justice. Magistrate Judge Boal correctly concluded that there were no conditions of release that would reasonably assure the defendant's appearance as required, the safety of witnesses, and the safety of the community. The record is well-established, and no hearing is necessary. The government understands defendant's desire to be released from jail. However, the remedy is not for the defendant to be released but rather for the defendant to have his day in court. The government, along with the victims and witnesses, stand ready for trial. This Court should deny defendant's motion and affirm Magistrate Judge Boal's detention order.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

 /s/ *Laura J. Kaplan*
Laura J. Kaplan
Assistant United States Attorney
One Courthouse Way
Boston, MA 02210

14

CERTIFICATE OF SERVICE

I, Laura J. Kaplan, hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Date: April 30, 2024                        */s/ Laura J. Kaplan*
                                            Laura J. Kaplan
                                            Assistant United States Attorney