UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO.  1:23-cr-10074-FDS |
| ) | |
| JEAN MOROSE VILIENA ) | |

GOVERNMENT'S TRIAL BRIEF

The United States files this brief to address issues which it anticipates may arise during the trial of this matter.

I.   THE CHARGES

The defendant is charged in a three count Indictment returned by the grand jury on March 21, 2023. [D.1].  As alleged in the Indictment, in December 2006, the defendant was elected to a four-year term as Mayor of Les Irois as a candidate for the Haitian Democratic and Reform Movement ("MODEREH") political party.  The defendant held that position until approximately February 2010.  As a candidate and as a mayor, the defendant was backed by a political machine called KOREGA, which exerts power throughout the southwestern region of Haiti through armed violence.  The defendant personally supervised his mayoral staff and security detail and led an armed group in Les Irois aligned with KOREGA. Under the defendant's direct supervision, the KOREGA militia enforced the defendant's policies by various means, including by targeting political opponents in Les Irois through armed violence.  During that time, the defendant engaged in several acts of violence, including the killing of one individual and the attack on a radio station and beatings of two other individuals, which caused these individuals serious injury.

Witness One is a Haitian citizen who, in or around July 27, 2007, spoke at a judicial proceeding in Les Irois on behalf of a neighbor who had been assaulted that morning by VILIENA. In reprisal for that testimony, that evening, VILIENA led an armed group to

Witness One's home, where VILIENA and his associates shot and killed Witness One's younger brother ("Victim One"), and then smashed Victim One's skull with a large rock before a crowd of bystanders.

In or around March 2008, a group of local journalists and activists founded a community radio station ("the radio station"). VILIENA opposed establishment of the radio station and, on April 8, 2008, mobilized members of his staff and the KOREGA militia to forcibly shut down the radio station and seize its broadcasting equipment. At that time, VILIENA distributed firearms to the KOREGA militia members, some of whom also carried machetes, picks, and sledgehammers.

Victim Two was a citizen of Haiti who rented out part of his home to the radio station. On the day of the attack on the radio station, VILIENA pistol whipped Victim Two with his gun and struck him with his fists. When Victim Two tried to flee, VILIENA ordered one of his associates to shoot and kill Victim Two. Shots were fired which hit Victim Two in the leg. Victim Two spent several months in various hospitals and his leg was later amputated above his knee.

Witness Two is a citizen of Haiti who became a target of VILIENA because of his association with the radio station. On the day of the attack of the radio station, Witness Two was at the radio station and when Witness Two tried to flee with Victim Two, Witness Two was hit by a bullet in the face. Witness Two required months of intensive medical treatment, including two surgeries to extract shotgun pellets from his face, which left Witness Two permanently blind in one eye. Pieces of shotgun pellets remain in Witness Two's scalp and arms.

On June 3, 2008, the defendant presented himself at the United States Embassy Consular Office in Port au Prince, Haiti where he submitted an Application for Immigrant Visa and Alien Registration, Form DS-230, Part II in order to gain entry to the United States. The form

specifically requires that each applicant state whether or not they are a member of any class of individuals that are excluded from admission into the United States, including those who have "ordered, carried out or materially assisted in extrajudicial and political killings and other acts of violence against the Haitian people." The defendant responded that he was not. This answer was false as evidenced by information from several victims and witnesses to the murder and beating described above. The defendant thereafter swore to, or affirmed, before a U.S. Consular Officer that the contents of the application were true and signed the application.

On or about June 4, 2008 and based upon the defendant's false representations in the Application for Immigrant Visa and Alien Registration Form DS-230, the U.S. Department of State approved the defendant's DS-230 application.

On or about July 14, 2008 – as the result of the approval of his DS-230 application – the defendant gained entry into the United States and was thereafter granted lawful permanent residence status in the United States. As a further result of the approval of his DS-230 application, the defendant received a Permanent Resident Card. The defendant has continued to possess a Permanent Resident Card and has used such card on numerous occasions to enter the United States.

On March 22, 2017, a civil lawsuit was filed against the defendant alleging various violations under the Torture Victim Protection Act and Alien Tort Statute. *See, Civil Case Number 17-10477-ADB*. The facts in that civil action include the incidents described in the Indictment involving Victims One and Two, and Witnesses One and Two. The same witnesses in the civil case will testify in the criminal trial.

On March 13, 2023, a jury trial was commenced in the District of Massachusetts before Judge Burroughs. On March 21, 2023, in Civil Case Number 17-10477-ADB. a jury found the defendant liable for the extrajudicial killing of Victim One, and the attempted extrajudicial killing

and torture of Victim Two and Witness Two. Plaintiffs were awarded 11 million dollars in punitive damages.

**Counts One-Three: Fraud and Misuse of Visas, Permits and Other Documents**

Counts One through Three of the Indictment charge the defendant with the use and possession of a Permanent Resident Card ("PRC"), in the name Jean Morose Viliena, which the defendant knew to be procured by means of a false claim and statement, in violation of 18 U.S.C. § 1546 (a).[1] The elements of that offense are:

<u>First,</u> that the defendant knowingly made a material false statement under oath;

<u>Second,</u> that the defendant made the statement voluntarily and intentionally; and

<u>Third,</u> that the defendant made the statement in an immigration form.

Count One of the Indictment charges the defendant with the fraudulent use and possession of a PRC, on or about May 15, 2018. It is alleged that, on or about May 15, 2018, the defendant possessed and used his PRC to obtain a new PRC at the United States Citizenship and Immigration Services ("USCIS) biometrics appointment in Boston.

Count Two of the Indictment charges the defendant with the fraudulent use and possession of a PRC, on or about November 4, 2020. It is alleged that the defendant possessed and used his PRC to travel between the Dominican Republic and Haiti.

---

[1] That statute reads in pertinent part: "[w]hoever knowingly . . . uses, attempts to use, possesses, obtains, accepts, or receives any [immigrant or nonimmigrant] visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to . . . have been procured by means of any false claim or statement . . . . Shall be fined under this title or imprisoned . . . ." 18 U.S.C. § 1546(a).

Count Three of the Indictment charges the defendant with the fraudulent possession of a Permanent Resident Card ("PRC"), from on or about November 5, 2020 through October 9, 2022. It is alleged that the defendant possessed his PRC to travel between Haiti and Boston.

## II. TRIAL ISSUES

The government anticipates that several evidentiary and instructional issues will arise at trial and outlines below its position on some of these issues.

### A. Disputed Exhibits

The government has submitted a list of proposed exhibits. The defendant has also submitted his list of exhibits which are the subject of the government's Motion in Limine to Preclude Defendant's Exhibits. One such exhibit is a letter written by the defendant while in the United States to his supporters. This letter should not be admitted because it contains unreliable self-serving statements which cannot be then cross-examined by the government. Another is a video in Haitian Creole with no translations and the speakers are unknown. Another is a 2019 video of the defendant speaking at a soccer match. This video has no relevance to the instant case.

### B. Defendant's Character Evidence and Government's Cross-Examination and Rebuttal

The defendant's witness list suggests that he intends to offer evidence of his "reputation for honesty, truthfulness and integrity in his community." As a general matter, evidence of a person's character is not admissible to prove action in conformity with such. *See* Rule 404(a). This is so because character evidence by its nature can be unreliable and unfairly prejudicial. *Michelson v. United States*, 335 U.S. 469, 473-480 (1948). However, Rule 404(a) provides an exception to this general rule and allows an accused to introduce "[e]vidence of a pertinent trait of his character." The word "pertinent" is synonymous with "relevant." *United States v.*

*Santana-Camacho*, 931 F.2d 966, 968 (1st Cir. 1991) ("traits of character 'pertinent' to the crime charged must be relevant . . . [the pertinent trait must] make any fact 'of consequence to the determination of the case [significantly] more or less probable than it would be without evidence of the trait.'" *quoting United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982)).

In this case, an individual's reputation for honesty and truthfulness is not pertinent to any of the counts of the indictment which charge violations of 18 U.S.C. § 1546(a). Even if it were, under Rule 405, the defendant's character witnesses must be restricted to testifying about their opinion of the relevant character trait or their knowledge of defendant's reputation in that regard. *See* Fed. R. Evid. 405(a). They may not testify about specific instances of conduct. *Id.*; *Michelson*, 355 U.S. at 477; *State of Arizona v. Elmer*, 21 F.3d 331, 335 (9th Cir. 1994). This is so because a defendant's character of honesty or truthfulness is not an essential element of a charge under 18 U.S.C. § 1546(a) that would support admission of evidence regarding specific instances of conduct under Fed. R. Evid. 405(b). The ability to introduce specific instances of conduct is narrowly confined because "evidence of specific instances of conduct . . . possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." Fed. R. Evid. 405 Advisory Committee's Note to 1972 Proposed Rules.

Equally important with regard to the presentation of character evidence is that once the defendant offers opinion or reputation testimony, the government is given wide latitude to cross-examine those witnesses about their knowledge of specific instances of the defendant's dishonesty, and the government is permitted to call rebuttal witnesses to testify about such specific instances. The Supreme Court's decision in *Michelson* is the preeminent authority on issues regarding character testimony, and includes the following discussion about the scope of cross-examination of character witnesses:

> The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law kept closed for his benefit and to make himself vulnerable where the law otherwise shields him. The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat — for it is not the man that he is, but the name that he had which is put in issue. Another hazard is that his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion. It may test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and speculate. Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans.

*Michelson* 355 U.S. at 479.

Fed. R. Evid. 405(a) codified the rationale of *Michelson*, making clear that character witnesses may be cross-examined about specific instances of misconduct that are relevant to the character traits in question. The cross-examination of a character witness may even include inquiries which are not otherwise allowed. For example, it is generally impermissible to introduce extrinsic evidence or cross-examine a defendant about whether he has been arrested for or committed past misdeeds unrelated to the charged offense. Nonetheless, if a character witness testifies for a defendant, the cross-examination may include inquiry about the defendant's past wrongful acts. *See Michelson*, 335 U.S. at 482; *United States v. Collins*, 779 F.2d 1520, 1532 (11th Cir. 1986); *United States v. Glass*, 709 F.2d 669, 673 (11th Cir. 1983); *United States v. Bynum*, 566 F.2d 914, 919 (5th Cir. 1980).

**C.     Anticipated Scope of the Defense Evidence: Five Thousand Men Violence**

First, it should be noted that in the almost two decades since the events underlying the instant criminal case and civil case this is the first that defendant has raised a defense involving a violent gang named Five Thousand Men of which, it is alleged, the government's witnesses are members. The government's expert witness has never heard of this purported violent gang nor is

there any public source information about them. However, the defendant's motions in limine suggest that the defendant seeks to inject into this case irrelevant and confusing evidence of violence by this alleged Five Thousand Men gang, and other atrocities committed against defendant and his supporters.

This defense effort, common in cases arising from war zones, amounts to a form of jury nullification which seeks to justify or muffle the specific criminal acts of a defendant by demonstrating that other individuals – in this case, the government's victims and witnesses -- committed similar or worse criminal acts. This Court should exclude or narrowly confine such evidence under Rule 403 as "confusion of the issues" and "misleading the jury."

The focus of the government's case will be on the specific acts committed by the defendant in 2007 and 2008. Other bad acts purportedly committed by the government's witnesses involving other individuals at other locations and during or after the 2007 murder of Ecclesiaste Boniface and 2008 radio station attack are not relevant to this case. While the defendant may attempt to explain or justify his commission of these violent acts with reference to alleged (and never reported) acts of violence committed by the government's witnesses, this trial should not be a forum for determining which group committed the worst atrocities. Instead, consistent with the rules of evidence, the focus of the trial must be on the defendant's actions, including whether he ordered, carried out or materially assisted in the commission of murder and other acts of violence in 2007 and 2008.

Finally, to the extent that the defendant is permitted to introduce evidence of such conduct, the government should be permitted to put on a rebuttal case, including the testimony of witnesses to rebut these allegations, as well as testimony about other crimes committed by the

defendant and his supporters. This will undoubtedly lengthen the trial but is the only way to even the playing field so that the government is not unfairly prejudiced.

D.     **Pending Motions *in Limine* for the Court's Resolution**

In addition to the evidentiary issues outlined in this memorandum, the government has submitted a number of motions *in limine*, to which the defendant has responded. The defendant has submitted over twenty motion *in limine*, to which the government has responded.

Respectfully submitted,

LEAH B. FOLEY
UNITED STATES ATTORNEY
District of Massachusetts

By:     *s/ Laura J. Kaplan*
      Laura J. Kaplan
      Assistant U.S. Attorney

      Alexandra Skinnion
      Human Rights and Special Prosecutions-DOJ
      Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that these documents are being filed through the ECF system and therefore will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*s/ Laura J. Kaplan*
Laura J. Kaplan
Assistant U.S. Attorney

Date: March 11, 2025